**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PEAK TECHNICAL SERVICES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-1568 |
| | § | |
| LAND & SEA ENGINEERING, LLC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is a contract dispute. Peak Technical Services, Inc. ("Peak") agreed to provide technical staff to support Land & Sea Engineering's[1] work designing cranes for offshore oil platforms pursuant to a ODS International purchase order. Land & Sea and ODS International are separate companies owned by Richard Hancock. Peak alleges that Land & Sea Engineering owes it $123,867.03 under their agreement and that ODS International breached a subsequent agreement with Peak guaranteeing Land & Sea's debt. Peak also alleges that both Land & Sea and ODS International fraudulently induced it to continue providing engineering staff after Land & Sea failed to pay an invoice.

ODS International has moved for summary judgment on Peak's claims that ODS International fraudulently induced Peak to continue providing engineering staff after Land & Sea failed to pay an invoice and that ODS International breached its promise to guarantee Land & Sea's debt. (Docket Entry Nos. 19, 28, 29). Peak responded, (Docket Entry Nos. 22, 31), and ODS

---

[1] Land & Sea used to be "ODS Engineering." It changed its name in 2009. This opinion refers only to Land & Sea.

International replied to Peak's response to the motion for summary judgment on fraud, (Docket Entry No. 23).

Based on the motions, responses, and reply; the summary judgment evidence; and the applicable law, the motion for summary judgment on the fraud claim, (Docket Entry No. 28), is granted. The motion for summary judgment on Peak's breach of contract claim against ODS International, (Docket Entry No. 19), is denied. The reasons for these rulings are explained below.

## I.   Factual Background

ODS International, a Texas corporation, is an oilfield supply and service company that provides equipment and components for drilling rigs and production platforms used in oil and gas exploration. Richard Hancock is its sole director and shareholder. (Docket Entry No. 28, Ex. B, Richard Hancock Depo., 7). Mike Dunham was its finance manager and Steve Curry was its engineering manager.

Dunham testified that ODS International also managed the administrative duties of the other defendant, Land & Sea, under an administrative-services agreement. (Docket Entry No. 28, Ex. C, Mike Dunham Depo., 5). Land & Sea, formerly called "ODS Engineering, LLC," is a California engineering and engineering design company. Hancock was its only owner. Steve Curry and another individual ran Land & Sea's day-to-day operations until June or July of 2009, when it began to wind down its business. (Docket Entry No. 28, Ex. B, Richard Hancock Depo., 13–14); (Docket Entry No. 31, Ex. F, Mike Dunham Depo., 21).

In October 2008, ODS International issued a purchase order to Land & Sea to design three cranes for offshore oil platforms. The cranes were part of ODS International's work under a contract with Atwood Oceanics. (Docket Entry No. 28, Ex. B, Richard Hancock Depo., 22). Land & Sea

in turn contracted with the plaintiff, Peak, to provide contract engineers and other staff for the crane-design work.  Under the Peak contract, Land & Sea would pay Peak $47.96 for each hour worked by its contractors.  Payment was to be weekly.  The contract stated that Peak's invoices were due on receipt and that interest would be added if payment was not received within fifteen days of the invoice date.  (Docket Entry No. 16, Original Complaint, Ex. A).

Peak claims that the staff contract engineers it provided worked for both Land & Sea and ODS International to perform ODS International's duties under the Atwood contract.  John Salvucci, a Peak account manager, and Ben Seversky, a Peak vice-president, stated in sworn affidavits that Peak's contract engineers worked for both Land & Sea and ODS International and that some of the work for ODS International was at its request.  (Docket Entry No. 31, Ex. A, John Salvucci Aff., ¶ 4; Ex. B, Ben Seversky Aff., ¶¶ 3–4).  Salvucci also stated that Peak's contract engineers' work was performed "under a tight deadline" and that he received only "positive feedback from the ODS entities regarding [the crane designs] and the work performed by Peak's contractors."  (Docket Entry No. 31, Ex. A, John Salvucci Aff., ¶ 6).

Peak submitted weekly invoices to Land & Sea for its contractors' work.  (Docket Entry No. 16, Original Complaint, Ex. A).  Dunham testified that Land & Sea approved the invoices and forwarded them to ODS International for processing and payment, as provided by the administrative-services agreement.  (Docket Entry No. 28, Ex. C, Mike Dunham Depo., 16–17). Dunham testified that he did not inform Peak of this procedure until February 2009.  (*Id.*, 54).

On February 23, 2009, Land & Sea failed to timely pay an invoice.  Salvucci stated in his affidavit that he contacted "Steve Curry, Mike Dunham and others employed at the ODS entities' accounts payable department on [February 23, 2009] and off and on through the middle of Spring

3

2010. During these verbal communications, the ODS accounts payables employees, Steve Curry, and Mike Dunham on behalf and with apparent authority of the ODS entities, made continuous and repeated representations, statements and promises to me that the ODS entities would pay for all the work performed and asked for Peak to continue to supply its contractors." (Docket Entry No. 31, Ex. A, John Salvucci Aff., ¶ 7). Seversky's testimony was the same. (Docket Entry No. 31, Ex. B, Ben Seversky Aff., ¶ 6). Salvucci and Severksy both testified that even though Land & Sea never paid Peak after the missed invoice, Peak continued to provide contractor services through the completion of the crane design at the end of June 2009. (*Id.*, ¶ 6); (Docket Entry No. 31, Ex. A, John Salvucci Aff., ¶ 7). On April 28, 2010, after the completion of Peak's work, Seversky received an email from Hancock stating, "Please accept our apologies. This is not deliberate. It is and will always remain our intent to pay Peak in full for the services it has completed but until our clients start releasing payments to us we are struggling." (Docket Entry No. 31, Ex. B, Ben Seversky Aff., ¶ 7 & Ex. 1).[2]

Hancock testified that in June or July 2009, he decided to wind down Land & Sea's business. He testified that Land & Sea paid its outstanding debts except for the money owed to Peak. (Docket Entry No. 31, Ex. E. Richard Hancock Depo., 90–91). Dunham testified that he and Hancock realized that Land & Sea had lost $670,000.00 and "that the economy, where it was standing, we could no longer function as a company." (Docket Entry No. 31, Ex. F, Mike Dunham Depo., 21).

---

[2] Dunham testified that upon completion of the crane designs, Land & Sea delivered them to ODS International which determined that the designs were deficient and unsafe. Dunham testified that ODS International redesigned the cranes at a cost of $1,000,000, which delayed the project. (Docket Entry No. 28, Ex. C, Mike Dunham Depo., 71–72).

Dunham also stated that there was no chance the company would revive because business had slowed and there was "no one needing that type of work." (*Id.*, 83).

Peak filed this lawsuit on May 3, 2010. The original complaint asserted breach of contract claims against Land & Sea and ODS International. (Docket Entry No. 1). Peak amended its complaint to assert claims for fraud and promissory estoppel. (Docket Entry No. 16).

In its motion for summary judgment on Peak's fraud claim, ODS International argues that Peak has not identified or submitted summary judgment evidence showing that when its agents or Land & Sea's agents promised to pay Peak under the contract, those promises were made with the intent not to perform. Peak responds that the evidence that Land & Sea wound down its business shortly after Peak completed its work provides sufficient circumstantial evidence of fraudulent intent. As to the contract claim, ODS International argues that there is no evidence of a valid contract between it and Peak under which it assumed or guaranteed Land & Sea's debt to Peak. ODS International argues that to the extent there is evidence of an oral guarantee, that contract is void under the statute of frauds. Peak responds that ODS International orally promised to pay Land & Sea's debt and that this promise is outside of the statute of frauds under Texas's "main purpose" doctrine.

The parties' arguments are analyzed below.

**II.     Summary Judgment**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine

5

issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

      If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

      When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

**III.     The Fraud Claim**

    **A.     The Legal Standards**

The elements of fraud in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

"A 'mere failure to perform a contract is not evidence of fraud.'" *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 403 (5th Cir. 2000) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). But "[a] promise of future performance may form the basis of a fraud claim if the promise was made with no intention of performing at the time the promise was made." *Dynegy, Inc. v. Yates*, --- S.W.3d ----, No. 04-10-00041-CV, 2011 WL 646571, at * (Tex. App.—San Antonio Feb. 23, 2011, no pet.) (citing *Formosa Plastics*, 960 S.W.2d at 48); *see also Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) ("A contractual promise made with no intention of performing may give rise to an action for fraudulent inducement."). "Evidence must be presented that a representation was made with the intent to deceive, and with no intention of performing as represented, at the time the representation was made." *Dynegy*, --- S.W.3d. ----, 2011 WL 646571, at *10 (citing *Formosa*, 960 S.W.2d at 48; *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986)). "The speaker's intent at the

7

time of the representation may be inferred from the speaker's subsequent acts after the representation was made." *Id.* (citing *Spoljaric*, 708 S.W.2d at 434). "'Slight circumstantial evidence of fraud, when considered with the breach of promise to perform, is sufficient to support a finding a fraudulent intent.'" *Spoljaric*, 708 S.W.2d at 435 (quoting *Maulding v. Niemeyer*, 241 S.W.2d 733, 738 (Tex. Civ. App. 1951)); *see also Travelers Exploration Co. v. Nomeco Oil & Gas Co.*, 30 F.3d 1490, 1994 WL 397633, at *3 (5th Cir. July 11, 1994) (unpublished table decision) ("Slight circumstantial evidence is sufficient to establish a finding a fraudulent intent" (internal quotations omitted)). "To determine whether a statement by the corporation was made with the requisite scienter, the appropriate focus is on the state of mind of the individual corporate official who made the statement rather than on the collective knowledge of all the corporation's officers and employees." *Dynegy*, --- S.W.3d ----, 2011 WL 646571, at *11 (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)).

**B.     Analysis**

The record includes evidence that Steve Curry, Mike Dunham, and "others employed at the ODS entities" made oral representations to Peak that it would be compensated for its contractor services after Land & Sea failed to pay an invoice on February 23, 2009. (Docket Entry No. 31, Ex. A, John Salvucci Aff., ¶ 7; Ex. B, Ben Seversky Aff., ¶ 6). Hancock made the same representation in an April 28, 2010 email, well after Peak had finished its work for Land & Sea. (Docket Entry No. 31, Ex. B, Ben Seversky, ¶ 7 & Ex. 1). The evidence also shows that Peak continued to provide contractor services to Land & Sea through the crane-design-project completion in June 2009. Land & Sea has not paid for the services. (Docket Entry No. 31, Ex. A, John Salvucci Aff., ¶ 7; Ex. B, Ben Seversky Aff., ¶ 6). Land & Sea's failure to pay Peak is not sufficient evidence of fraud to

withstand summary judgment. *Kimmons*, 228 F.3d at 403. The issue is whether Peak has identified or produced even slight circumstantial evidence showing that when Curry, Dunham, "others employed at ODS," represented that Land & Sea would pay Peak for its contractor services, these individuals did not intend to pay. *Formosa*, 960 S.W.2d at 48; *Spoljaric*, 708 S.W.2d at 434; *Dynegy*, --- S.W.3d. ----, 2011 WL 646571, at *10.

The only evidence Peak identified to show fraudulent intent is that Land & Sea decided to wind down its business in June or July of 2009, shortly after Peak completed its work on the crane-design project. Peak argues that this evidence shows that "the ODS entities were stringing Peak along with representations, statement and promises of payment, knowing all along that once the crane designs were complete, the ODS entities would not pay Peak for all of its work." (Docket Entry No. 31, at 8). Peak has not cited any Texas case holding that evidence that a company decided to close its operations shortly after promising to make payments due under a contract provides circumstantial evidence of fraudulent intent. Texas courts have found that the following provide sufficient circumstantial evidence of fraudulent intent: (1) testimony by a company's agent that he misrepresented the company's intent to pay a contractual obligation, *Safety Anchor Prods., Inc. v. Pauree*, No. 08-01-00341-CV, 2003 WL 152829, at *2 (Tex. App.—El Paso Jan. 23, 2009, no pet.); (2) an agent's later denial that he ever made an agreement to pay the company's contractual obligations, *Harco Energy, Inc. v. The Re-entry People, Inc.*, 23 S.W.3d 389, 395 (Tex. App.—Amarillo 2000, no pet.); and (3) evidence that a company entered into a subsequent contract violating its obligations under a previous contract, *Oliver v. Rogers*, 976 S.W.2d 792, 804 (Tex. App.—Houston [1st Dist.] 1998, no pet.). In the present case, there is no testimony or other

9

evidence that Land & Sea did not intend to pay Peak when it promised to do so, denied that it had promised to pay Peak, or entered into additional contracts after it failed to pay Peak.

There is also no evidence that when Curry, Mike Dunham, and "others employed at the ODS entities" assured Peak that it would be paid, any of these employees knew that Land & Sea would wind down in June or July 2009 and would not pay Peak amounts due under the contract. *Dynegy*, --- S.W.3d ----, 2011 WL 646571, at *11; *Southland Sec. Corp.*, 365 F.3d at 366. Even assuming that Curry, Dunham, or others knew that Land & Sea would soon wind down its business, there is no evidence that any of these individuals knew or intended that Peak would not eventually be paid for its contractors' services. To the contrary, the evidence shows that as late as April 28, 2010 — less than one week before Peak filed this lawsuit — Hancock continued to assure Peak that it would be compensated for its services, even though Peak was no longer providing contractors and Hancock and Dunham had decided to wind down Land & Sea's business. As Dunham testified, "[a]nd the only thing I would reiterate is ODS Engineering did always plan on paying the bills, and if we would have generated the cash, we would have been more than happy to—to pay."). (Docket Entry No. 22, Ex. E, Mike Dunham Depo., 92). The evidence also shows that after Land & Sea wound down its business, it paid its outstanding obligations except what it owed Peak.

The evidence shows that ODS International's and Land & Sea's agents promised to pay Peak, and later was unable to do so. Under Texas law, this is not sufficient to raise a fact issue as to fraud.

**IV.    The Breach of Contract Claim**

    **A.    The Legal Standards**

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007); *Aguilar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston 2005, pet. denied). "The elements of a valid contract are: (1) an offer; (2) an acceptance; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Roman v. Roman*, 193 S.W.3d 40, 50 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

A promise or agreement within the statute of frauds is not enforceable unless the promise or agreement, or a memorandum of it, is in writing and signed by the person to be charged or by someone lawfully authorized to sign for him. TEX. BUS. & COM. CODE § 26.01(a). The statute of frauds applies to "a promise by one person to answer for the debt, default, or miscarriage of another person." *Id.* § 26.01(b)(2). "[T]he basic reason for requiring that a promise to answer for the default of another be in writing is that the promisor has received no direct benefit from the transaction." *Cooper Petroleum Co. v. LaGloria Oil & Gas Co.*, 436 S.W.2d 889, 895 (Tex.1969). But a promise within this suretyship provision of the statute of frauds may be enforceable without a writing under the "main purpose doctrine." *Chubb Lloyds Ins. Co. of Tex. v. Andrew's Restoration, Inc.*, 323 S.W.3d 564, 572 (Tex. Ap.—Dallas Aug. 20, 2010, no pet.).

"The 'primary purpose' or 'main purpose' exception to the Statute of Frauds usually arises when either (1) a promise to pay the debt of a third party is made for the primary benefit of the promisor, or (2) a contract involving the sale of goods is predominantly for the sale of services." *GWTP Invs., LP v. SES Americom, Inc.*, 497 F.3d 578, 482 (5th Cir. 2007) (citing *Cooper Petroleum*

11

*Co. v. LaGloria Oil & Gas Co.*, 436 S.W.2d 889 (Tex. 1969); *Propulsion Techs., Inc. v. Attwood Corp.*, 369 F.3d 896, 900–01 (5th Cir. 2004)). "Broadly speaking," the main purpose doctrine "removes an oral agreement to pay the debt of another from the statute of frauds 'wherever the main purpose and object of the promisor is not to answer for another, but to []serve some purpose of his own . . . .'" *Power Entm't, Inc. v. Nat'l Football League Props., Inc.*, 151 F.3d 247, 249 (5th Cir. 1998) (quoting *Gulf Liquid Fertilizer Co. v. Titus*, 354 S.W.2d 378, 386 (1962)).

"Courts have identified three tests to determine if the main-purpose doctrine makes a particular oral promise enforceable despite the statute of frauds: (1) Did the promissor intend to become primarily liable for the debt, in effect making it his original obligation, rather than to merely become a surety for the original obligor?; (2) Was there consideration for the promise?; [and] (3) Was receipt of the consideration the promissor's main purpose or leading object in making the promise, i.e., was the consideration given for the promise primarily for the promissor's own use and benefit?" *Chubb Lloyds*, 323 S.W.3d at 572 (citing *Gulf Liquid Fertilizer*, 354 S.W.2d at 383); *see also Power Entm't Inc.*, 151 F.3d at 249 (same). "The intention of the parties may be determined by considering all of the surrounding facts and circumstances, including: (1) the words and expressions used by the parties; (2) the parties' acts and conduct; (3) whether the services were rendered before or after the promise; (4) the manner in which the seller carried the account on his books; (5) the manner in which payments were made; (6) the purpose of the agreement; and (7) the promisor's interest in the transaction." *Dynegy*,--- S.W.3d. ----, 2011 WL 646571, at *3.

### B.     Analysis

Peak has submitted evidence that ODS International agreed to pay Land & Sea's debt under circumstances that make the main purpose doctrine applicable. Seversky and Salvucci both

submitted affidavits stating that Dunham, ODS International's finance manager, repeatedly assured them that Peak would be compensated for its services after Land & Sea failed to pay its February 23, 2009 invoice. (Docket Entry No. 31, Ex. A, John Salvucci Aff., ¶ 7; Ex. B, Ben Seversky Aff., ¶ 6). Hancock's April 2010 email stating, "[i]t is and will always remain our intent to pay Peak in full for the services it has completed but until our clients start releasing payments to us we are struggling," provides circumstantial evidence that the parties agreed that Peak would continue working under an agreement that ODS International would pay Land & Sea's debts. (*Id..*, ¶ 7). The fact that Peak continued to provide contractor services after Land & Sea failed to pay the invoice and after Dunham assured Peak that it would be paid further evidences this agreement and provides evidence of consideration. *See Dynegy*, --- S.W.3d. ----, 2011 WL 646571, at *3 (noting that evidence that work was performed after the agreement supports an agreement under the main purpose doctrine); *Morris v. Carter*, 261 S.W.2d 614, 616 (Tex. Civ. App.—Dallas 1953, writ ref'd n.r.e.) (finding that a promise to pay for repairs to a third party's car was not subject to the statute of frauds in part because the promise was made before the repairs were undertaken). ODS International directly benefitted from Peak continuing to provide contractor services because the contractors' work was directly related to ODS International's contract with Atwood Oceanics. *See Leppke v. Cokinos, Bosien & Young*, No. 14-99-00697-CV, 2001 WL 40345, at *6 (Tex. App.—Houston [1st Dist.] Jan. 18, 2001, no pet.) (noting that an oral promise by a corporation's stockholders and directors may not be within the statute of frauds when "their main purpose was to subserve their own purpose and promote their financial gain"); RESTATEMENT (SECOND) OF CONTRACTS § 116 (1981) ("A contract that all or part of a duty of a third person to the promisee shall be satisfied is not within the Statute of Frauds as a promise to answer for the duty of another

if the consideration for the promise is in fact or apparently desired by the promisor mainly for his own economic advantage, rather than in order to benefit the third person."). Based on this evidence, a jury could find that ODS International agreed to guarantee Land & Sea's debt. Under the main purpose doctrine, that this agreement was not in writing does not prevent its enforcement.

ODS International emphasizes that Peak's agreement was only with Land & Sea. ODS International points to evidence showing that it performed only administrative functions for Land & Sea under an administrative-services agreement and to evidence that it informed Peak of the limited nature of this arrangement. ODS International argues that because its role in Land & Sea was only administrative, it could not have reached a guarantee agreement with Peak. Finally, ODS International points to Hancock's testimony that it never paid Land & Sea's debts, but instead only loaned money to Land & Sea to pay its debts. There is, however, conflicting evidence in the record. Seversky and Salvucci both stated that Peak contractors performed work for both Land & Sea and ODS International after Land & Sea failed to pay the February 23, 2009 invoice. There is also evidence that Dunham, who worked exclusively for ODS International, independently assured Peak that it would be paid for its contractor services. And while Hancock asserted that ODS International has never paid Land & Sea's debts, ODS International has not produced any loan documents. (Docket Entry No. 22, Ex. D, Hancock Depo., 58–59). The record reveals disputed fact issues material to determining whether ODS International had an enforceable guarantee agreement. The record does not entitle ODS International to summary judgment dismissing the breach of contract claim.

## V.       Conclusion

The motion for summary judgment dismissing the fraud claim, (Docket Entry No. 28), is granted.  The motion for summary judgment dismissing Peak's breach of contract claim against ODS International, (Docket Entry No. 19), is denied.

SIGNED on May 27, 2011, at Houston, Texas.

                                                    Lee H. Rosenthal
                                        United States District Judge